# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEZANDER DELGADO,<br><br>          Plaintiff,<br><br>     vs.<br><br>GONZALES, et al.,<br><br>          Defendants. | 1:12cv00319 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND CERTAIN DEFENDANTS<br><br>THIRTY-DAY DEADLINE |

Plaintiff Alezander Delgado, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on March 2, 2012. On February 27, 2013, the Court screened the complaint and found that it stated a cognizable retaliation claim against Defendant Gonzales. Plaintiff was ordered to either file an amended complaint, or notify the Court of his willingness to proceed only on this cognizable claim.

On April 4, 2013, Plaintiff filed a First Amended Complaint ("FAC"). He names LVN L. Gonzalez, LVN Villasenor, LVN K. Morris and Lieutenant T. Akin as Defendants.

**A.     LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

1

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at High Desert State Prison. The events complained of occurred at SATF.

Plaintiff alleges that he wrote Defendant Gonzalez up on November 12, 2009, for "unbecoming" conduct and constant bias towards Plaintiff's lifestyle.

On March 6, 2010, Plaintiff contends Defendant Gonzalez had him written up for allegedly delaying her pill line. Plaintiff contends that there was no need to write him up and that he could have been given an order to move ahead. He was handcuffed and placed in the clinic holding cell for unknown reasons, where he refused to be strip searched by Officer Carnales to avoid female officers from viewing his body. Plaintiff was detained throughout breakfast and completion of the a.m. pill line.

Sgt. Ibarra entered the clinic area, where he was met by Defendant Gonzalez. The two exchanged friendly conversation and "some detestable comments in regards to gays." As Sgt. Ibarra left the clinic, he ordered Officer Carnales to provide Plaintiff with a sack lunch and return him to his assigned cell.

Plaintiff returned to his cell and received his medications with no further problems. At noon, Plaintiff received his medications from Defendant Gonzalez without a problem. At 5:00 p.m. and 8:00 p.m., he again went to the pill line and got his medications without a problem.

On March 7, 2010, throughout the day, Plaintiff received his medications from Defendant Gonzalez with no problem.

At approximately 6:30 a.m. on March 8, 2010, Officers Lyons and Quintana arrived at Plaintiff's cell and ordered him to back out. They quickly handcuffed Plaintiff and brought him to the program hold cages. He was held for several hours and was not told why. Officer Lyons eventually told him, "You know how the game is played." Compl. 4. Officer Ibarra stopped by and smiled at Plaintiff, telling him, "I'm going to show you what happens when you mess with our staff." Compl. 4.

Soon after, at maybe 9:00 a.m., Defendant Morris performed a medical injury report.

Plaintiff remained in the cage with no access to a toilet or food. Plaintiff, who was barefooted, began to kick the metal cage and bang on the sides of the cage with his open palms. Suddenly, Defendant Akin rushed into the room of holding cages with keys in his hand and

quickly opened the cage without saying a word. Plaintiff thought he was being released and as he took a step forward, Defendant Akin, who was holding the door with his left hand, intentionally slammed the edge of the metal gate into Plaintiff's forehead. This dazed Plaintiff, and he dropped to his knees as his bladder gave out. Plaintiff contends that there was no need to use the door as a battering ram because he did not pose a threat. Plaintiff was in the cage in only his boxer shorts and he contends that there was no need to use such excessive force. Plaintiff contends that Defendant Akin "showed no effort" to use as little force as necessary if he was trying to get Plaintiff to stop attracting attention and making noise by hitting the cage. Compl. 5.

Plaintiff crawled out of the room. He thought he should run, but he was too dazed. Someone then lifted him up by the arms and sat him on a chair in the program hallway. He could hear orders to Officer Diaz to videotape Plaintiff. As Plaintiff was recorded, someone ordered Officer Diaz to "make sure you get all that on the cage!" Compl. 6. Officer Diaz recorded Plaintiff's injuries as Defendants Villasenor and Morris made comment about that "gross smell" due to Plaintiff urinating on himself. Compl. 6.

The nurses then attended to Plaintiff's injuries and cleaned and bandaged his forehead. Plaintiff continued asking to speak to a Lieutenant. Defendant Morris then said to Defendant Akins, "That's you! He wants to speak to a Lieutenant!" Compl. 7. Defendant Morris asked how this happened, and Defendant Akin said that Plaintiff hit his head on a metal door. Plaintiff did not know that it was Defendant Akin until then.

Officer Diaz was ordered to take Plaintiff to the Central Treatment Center ("CTC") and have him placed on suicide watch. Officer Diaz lifted Plaintiff slowly by one arm and guided Plaintiff, who was dressed in a pair of pants with no shoes or shirt, to CTC. Plaintiff heard Officer Diaz state, "Hey Gonzalez, look what you did to Delgado." Defendant Gonzalez cheered and said, "Get his sick ass." Compl. 4.

Plaintiff was taken to CTC, where he composed himself. He underwent a suicide assessment. Plaintiff refused to be placed on suicide observation because he was receiving a visit from his mother and brother. Plaintiff pleaded to be cleared but he was eventually re-housed in Ad-Seg. While awaiting to be re-housed in Ad-Seg, Lieutenant McCormack and Officer Carlos asked Plaintiff what happened. Plaintiff said he had no idea, and McCormack and Carlos told him, "You now have Lt. Akin doing over time- doing incident package on you!" Compl. 7. They left and told Plaintiff to take it easy.

On March 8, 2010, Ad-Seg Officer Hopkins noticed the bandage on Plaintiff's forehead and said, "Oh hell, this is not happening on my watch." Compl. 7. Officer Hopkins summoned an Ad-Seg nurse to perform an Injury Report.

Plaintiff submitted medical requests for the new pains and numbness to his feet and hands. On March 17, 2010, the Ad-Seg committee reviewed the lock-up order and Chief Deputy Warden Ralph Diaz ordered that Plaintiff be released and returned to Facility D. Plaintiff was held in Ad-Seg while a new lock-up order was issued by Defendant Gonzalez, who claimed that her life would be in serious danger if Plaintiff returned to Facility D.

On or about March 22, 2010, Plaintiff was relocated to Facility E, where he continued to complain that something was wrong with his neck. He received an MRI and discovered impingement and compression to discs C5 and C6. Plaintiff alleges that he needed surgery on an "urgent basis." Compl. 8.

Prior to the assault by Defendant Akin, Plaintiff was very active in work and exercise, but he has been irreparably injured by Defendants' conduct. He contends that they failed to uphold policy by not properly controlling staff to prevent "overzealous and bias" towards Plaintiff. Compl. 8. He also contends that Defendants covered up the video proof of Plaintiff's injuries.

Plaintiff alleges that Defendant Gonzalez persuaded Sgt. Ibarra to arrest Plaintiff and place him in Ad-Seg. He requests monetary damages.

5

C.     **ANALYSIS**

    1.     *Eighth Amendment- Excessive Force*

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson, 503 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9-10) (quotations marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

Plaintiff alleges that Defendant Akin used excessive force against him when he opened the cage door, which then struck Plaintiff in the forehead. According to Plaintiff, Defendant Akin opened the cage door without speaking. Plaintiff, who thought he was going to the Lieutenant's office, took a step forward. As he stepped forward, Defendant Akin intentionally

6

slammed the edge of the metal gate into Plaintiff's forehead. Plaintiff contends that he did not pose a threat.

Plaintiff admits that moments before the incident, he had been kicking the metal bars with his feet and hitting the bars with his open palm. He also admits that he thought he was going to get out of the cage and took a step forward just after Defendant Akin had opened the door. Plaintiff is correct that Defendant Akin's actions were intentional, but contrary to Plaintiff's contrary belief, there is no indication that Defendant Akin acted maliciously or sadistically.

As the Court explained in its prior screening order, Plaintiff's behavior immediately prior to the incident, including hitting the cage bars and taking a step forward when Defendant Akin opened the door, indicate that Defendant Akin likely tried to close the door when confronted with Plaintiff's attempts to move forward. Plaintiff attempts to fault Defendant Akin for "show[ing] no effort" to use as little force as necessary to get him to stop attracting attention and making noise, but he ignores the fact that Defendant Akin was, by Plaintiff's own admission, faced with the possibility of a combatant inmate. That the door hit Plaintiff in the forehead while Defendant Akin was attempting to close it does not show an intent to cause harm. Closing an open cage door as an inmate is attempting to step forward simply does not constitute the use of wanton and unnecessary force.

Plaintiff therefore fails to state a claim against Defendant Akin. Plaintiff has been given an opportunity to correct this deficiency but has failed to do so.

2.   *Retaliation*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First

Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

As the Court found in the prior screening order, Plaintiff states a claim against Defendant Gonzalez based on his allegation that Defendant Gonzalez retaliated against him for his November 12, 2009, complaint against her by making false allegations that led to his placement in Ad-Seg.[1]

    3.    *Defendants Villasenor and Morris*

The Court explained in the prior screening order that Plaintiff must link the named Defendants to the participation in the violation at issue to successfully allege a claim under section 1983. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1948-49.

As is relevant to his FAC, Plaintiff includes Defendants Villasenor and Morris in his allegations, but he fails to link them to any constitutional violation. Plaintiff alleges that Defendant Morris performed an injury report, and that she later asked for a Lieutenant. He further alleges that Defendants Morris and Villasenor made a comment about a "gross smell" after Plaintiff urinated on himself.

Although he alleges that Defendants Villasenor and Morris took certain actions, the actions alleged do not give rise to any constitutional violation. He does not allege that they provided inadequate medical treatment, and to the extent he attempts to state a claim based on their comments, he cannot do so. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and

---

[1] Plaintiff will be instructed on service by separate order.

threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff was permitted to amend his claim, but failed to cure the deficiency.

## D.     FINDINGS AND RECOMMENDATIONS

Based on the above, the Court finds that this action should go forward on against Defendant Gonzalez for retaliation in violation of the First Amendment. It does not state any other claims against any other Defendants. As a result, Defendants Akin, Villasenor and Morris should be dismissed. Plaintiff has been given an opportunity to correct the deficiencies but has failed to do so. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012) (internal quotation marks and citation omitted).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 13, 2013**              /s/ Dennis L. Beck
                                                                UNITED STATES MAGISTRATE JUDGE